**UNITED STATES of America**

v.

**Harvey JOHNPOLL, Defendant.**

**No. 83 Cr. 82 (RLC).**

United States District Court,
S.D. New York.

Aug. 2, 1990.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, for U.S.; James E. Johnson, Asst. U.S. Atty., of counsel.

Zane and Rudofsky, New York City, for defendant; James B. Zane, Edward S. Rudofsky, Scott Leavitt, of counsel.

**ROBERT L. CARTER, District Judge.**

Defendant Harvey Johnpoll, in a petition pursuant to 28 U.S.C. § 2255, seeks an order vacating his conviction and judgment, dismissing the indictment against him with prejudice, granting him a full hearing on the issues raised in the petition, and granting him a new trial. Additionally, Johnpoll moves pursuant to 28 U.S.C. §§ 144 and 455 that the court recuse itself from deciding the instant petition.

**I.**

Johnpoll was convicted on seven counts of a twelve count indictment on September 30, 1983, charging him with masterminding and participating in a scheme to transport six million dollars in stolen securities to Switzerland, sell these securities abroad and return the proceeds to the United States. He was sentenced to 15 years imprisonment and a $70,000 committed fine. On appeal, the conviction was affirmed on four of the seven counts, and reversed on three. *United States of America v. Johnpoll*, 739 F.2d 702 (2d Cir.1984). Johnpoll's petition for rehearing was denied. No. 83–1335, slip op. (2d Cir. Aug. 1, 1984). Following the appeal, Johnpoll was resentenced and he thereafter filed a writ of certiorari in the Supreme Court. That petition was denied, 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984), as was a subsequent request for reconsideration. 469

U.S. 1197, 105 S.Ct. 982, 83 L.Ed.2d 983 (1985).

Despite having taken an appeal and been denied certiorari, Johnpoll persisted in his efforts to overturn his conviction. In May, 1985, he filed a Rule 35 motion in this court seeking a reduction of his sentence. That motion was denied. No. 83 Cr. 82 (RLC), slip op. (S.D.N.Y. July 10, 1985). On June 17, 1985, he sought rehearing in the Court of Appeals asserting some 18 grounds for reconsideration. That application was also denied. No. 83–1335, slip op. (2d Cir. Sept. 3, 1985). Still undeterred and now claiming mental incompetence at the time of his trial, Johnpoll invoked 28 U.S.C. § 2255 and moved for a hearing before this court, a psychological examination and an order vacating his conviction. The court denied that motion on December 11, 1985. No. 83 Cr. 82 (RLC), slip op. (S.D.N.Y. Dec. 11, 1985). Johnpoll promptly appealed to the Court of Appeals, which affirmed this court's ruling, No. 83–1335, slip op. (2d Cir. July 14, 1986), and rejected his request for rehearing en banc. No. 83–1335, slip op. (2d Cir. Aug. 13, 1986).

Johnpoll now is proceeding with another § 2255 motion, claiming that: 1) the securities in question were worthless at the time they were stolen; 2) the government did not prove that the securities were stolen; 3) the trial court erred by failing to ask specific questions requested during voir dire; 4) he was denied his constitutional right of confrontation; 5) he was denied his right of compulsory process; 6) the government suppressed evidence crucial to his defense; 7) he was improperly ordered to cease his Swiss litigation; 8) the indictment was flawed and must be dismissed; 9) the jury charge was error laden; 10) the trial transcript does not accurately reflect the trial proceedings, and 11) the trial judge was not impartial to him.

**II.**

Before considering Johnpoll's § 2255 petition, it is necessary to consider his recusal motion. Johnpoll contends that the court is biased against him and therefore must recuse itself under 28 U.S.C. §§ 144,

455(b)(1), and 455(a) from any further dealings with this case.

Under § 144, a judge shall disqualify himself "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice . . . against him." Section 455(b)(1) provides for disqualification of a judge "[w]here he has a personal bias or prejudice concerning a party." Section 144 and § 455(b)(1) are construed *in pari materia*. *Apple v. Jewish Hosp. and Medical Center*, 829 F.2d 326, 333 (2d Cir.1987). Section 455(a) is broader in scope than the above sections and requires a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." A motion for recusal is a matter committed to the sound discretion of the district court and there is a substantial burden on the movant to show that the judge is biased. *Lamborn v. Dittmer*, 726 F.Supp. 510, 514 (S.D.N.Y. 1989) (Carter, J.).

Essentially, Johnpoll alleges two bases of prejudice against him. First, he claims that the court was biased in favor of the prosecutor, Assistant United States Attorney Patricia Ann Williams. Johnpoll claims that I had a romantic relationship with Williams during the time of the trial and, in support of this theory, declares that he was told by "numerous" unnamed individuals that Williams and I were personally involved. Johnpoll also declares that he personally observed Williams and me seated at the same table at a Law Day dinner, that we left at approximately the same time, and that I did not appear in court the next day. Additionally, Johnpoll suggests that I was prejudiced in favor of Williams because she was the only African–American prosecutor in the Southern District United States Attorney's Office at that time.

Second, Johnpoll argues that my various rulings during the course of the proceedings show prejudice against him. Specifically, Johnpoll complains that the court: 1)

allowed him to be tried and convicted based on an allegedly error-laden indictment; 2) admitted allegedly improperly obtained evidence from the Swiss government in violation of a United States–Swiss treaty;[1] 3) denied his request for certain legal materials, and office equipment and supplies; 4) allowed certain witnesses to be deposed in Switzerland rather than appearing in New York for the trial when he was denied access to Switzerland because of an outstanding arrest warrant; 5) prohibited him from objecting to certain deposition testimony taken in Switzerland and admitted that testimony; 6) directed him to withdraw an appeal pending before the Swiss courts; 7) refused to ask certain requested voir dire questions; 8) quashed certain of his subpoenas; 9) gave an allegedly incorrect jury charge, and; 10) "fixed" the trial transcript.

### A.

Before reaching the merits of the recusal motion, it is necessary to determine whether procedural requirements as to form and timeliness have been met. Affidavits filed under § 144 are strictly scrutinized for form and timeliness, *United States v. Womack*, 454 F.2d 1337, 1341 (5th Cir. 1972), *cert. denied*, 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316 (1973), and, although the Second Circuit has not yet decided whether an affidavit is required to bring a motion for recusal under § 455, when one is offered it will be subject to the same scrutiny as an affidavit offered under § 144. *Apple v. Jewish Hosp. and Medical Center, supra*, 829 F.2d at 333.

■ As a general rule, a motion to recuse should be made at the earliest possible moment after obtaining facts demonstrating a basis for recusal, *Id.* at 333, and such motions are often denied on the basis of untimeliness when there has been only a short delay. *See, Lamborn v. Dittmer, supra*, 726 F.Supp. at 515. Johnpoll's motion comes over six years after the date of the trial during which the alleged preju-

---

1. Treaty of Mutual Assistance in Criminal Matters, May 25, 1973, United States—Switzerland, 27 U.S.T. 2019, T.I.A.S. No. 8302 (January 23, 1977).

dicial conduct occurred and therefore is presumptively untimely.

As Johnpoll points out, in addition to lapse of time four other factors are taken into account in considering the timeliness of a recusal motion: 1) whether granting the motion would represent a waste of judicial resources, 2) whether the movant has participated in a substantial manner in trial or pre-trial proceedings, 3) whether the motion was made after the entry of judgment, and 4) whether the movant can demonstrate good cause for delay. *Apple v. Jewish Hosp. and Medical Center, supra,* 829 F.2d at 334.

None of these considerations strengthen Johnpoll's case. First, recusal at this point in time would result in a waste of judicial resources in that a judge unfamiliar with this case would be called on to rule on issues with which I am already familiar. Second, all the activities allegedly showing bias were known to Johnpoll at the time of the trial. Since then, the trial has concluded, sentence has been imposed, various appeals have been taken and six years time has passed. Johnpoll offers no reason for his delay in bringing this motion and the inference is inescapable that this is simply a last ditch effort—all the others having failed—by which Johnpoll hopes to attack his conviction.

■ In addition to being untimely, Johnpoll's motion is deficient in form as to certain allegations because his counsel has not certified that they are made in good faith. Although Johnpoll's counsel has provided a certificate as required by 28 U.S.C. § 144, he states in that certificate that he is not in a position to investigate and has no knowledge of any personal relationship between Williams and the court, of events which allegedly occurred at the trial but which are not reflected in the trial transcript, or of the alleged alteration of the trial transcript. Johnpoll's counsel certifies that the balance of the matters raised by Johnpoll are based upon at least a colorable interpretation of the record and are advanced in good faith.

In considering Johnpoll's petition, I will disregard all allegations not certified by counsel. This is necessary and justified because a judge is not allowed to scrutinize a § 144 affidavit for accuracy even if he "knows to a certainty that the allegations of personal prejudice are false." *In re Martin–Trigona,* 573 F.Supp. 1237, 1244 (D.Conn.1983). "If a certificate is to serve the purpose of shielding a court which cannot test the truth of claimed facts, it should at least carry the assertion that counsel believes the facts alleged to be accurate and correct." *In re Union Leader,* 292 F.2d 381, 385 (1st Cir.), *cert. denied,* 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961). Disregarding the allegations uncertified by counsel, all of the incidents purportedly showing prejudice are rulings and conduct taking place during the trial.

### B.

■ As discussed above, Johnpoll's motion could be denied simply because it is not timely. However, in an effort to afford Johnpoll the benefit of every doubt, the court will address the merits of the allegations certified by counsel. *Paschall v. Mayone,* 454 F.Supp. 1289, 1300 (S.D.N.Y. 1978) (Carter, J.) ("since the impartiality of the court has been questioned, it is important to address [the defendant's] contentions on the merits").

It is clear that under §§ 144 and 455(b)(1) disqualifying prejudice must stem from an extrajudicial source. *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). Therefore, Johnpoll's claims under these sections can be disposed of quickly since they are legally insufficient to support a motion for recusal.

Section 455(a) requires more consideration. This section is broader than §§ 144 and 455(b)(1) in that it does not contain the term "personal" and therefore it is not an absolute requirement that the disqualifying bias spring from an extrajudicial source. *Lamborn v. Dittmer, supra,* 726 F.Supp. at 516–17. However, Johnpoll's complaints about various adverse rulings made during the course of the trial cannot substantiate his claim of bias. All rulings complained of by Johnpoll were of the type normally

made during the course of a trial and represent the court's best judgment regarding the issues involved. The fact that rulings were made against Johnpoll on some occasions shows disagreement with the legal argument he was advancing, not that the court was biased against the defendant personally.

Even if actual prejudice does not exist, as it most certainly does not here, it is also necessary under § 455(a) to consider whether there is the appearance of prejudice. In determining whether there is an appearance of prejudice the court uses an objective standard "which assumes that a reasonable person *knows and understands all the relevant facts." In Re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2nd Cir.1988) (emphasis original). Unreasonable arguments that there is an appearance of prejudice do not require disqualification under § 455(a). *See* S.Rep. No. 93–419, 93d Cong., 1st Sess., 1973, p. 5 ("[n]othing in [§ 455] should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial"). In my judgment, no one who knows and understands the relevant facts would think there is an appearance of prejudice in this case, and, accordingly, Johnpoll's recusal motion must be denied on this ground also.

Although the court is not required to consider claims in Johnpoll's affidavit which are uncertified by counsel, given the *serious nature of his accusations, comment is in order.*[2] The linchpin of Johnpoll's recusal motion is the wholly fabricated and absurd claim that there was a romantic relationship between the Assistant United States Attorney in charge of the prosecution of his case and myself. This accusation is entirely baseless. Williams is one of several Assistant United States Attorneys whose growth in the United States Attorney's office from neophyte into an assured, professional and first-rate litigator it was my pleasure to witness. There was never

any romantic relationship between Williams and myself.

Johnpoll's principal support for this contention is his supposed observation of Williams and me seated together at a Law Day dinner held at the Pierre Hotel on May 2, 1983, which he claims he attended. I do not remember being at the dinner in 1983, nor do I remember seeing Williams present at any of the Law Day dinners I attended. Of course, it is possible that I may have attended the 1983 dinner and possible that Williams may have been there as well. It is extremely doubtful, however, that Johnpoll, on trial on a multi-count felony indictment at the time, was there. Neither Johnpoll nor his wife is a lawyer and, therefore, it is highly improbable that he would have had any occasion to be at the Law Day dinner in 1983. Furthermore, had he been present, knowing his aggressive personality he would certainly have made his presence known to me. Since I do not recall attending the 1983 dinner and do not recall Johnpoll's presence at any of these affairs which I did attend, I refuse to credit his assertion that he saw me at the 1983 Law Day dinner.

Johnpoll's allegation that I did not appear in court the day after I supposedly had dinner with Williams—a transparent accusation that we spent the night together—is expressly belied by the facts. The docket of this case shows that on May 3, 1983, not only was I in court, but I held the fifth pre-trial conference in this case and Johnpoll was in attendance at this hearing.

The absurdity and desperate nature of this claim is evident from its staleness. The event which supposedly led to the belief that a personal relationship existed between Williams and me, the Law Day dinner, allegedly took place a few months prior to the commencement in July, 1983, of Johnpoll's actual trial before me. Yet, only after the conclusion of his trial, myriad efforts to set aside the conviction through direct appeals, requests for re-

---

**2.** To the extent that § 455(a) may require consideration of uncertified allegations, I find Johnpoll's allegations regarding extrajudicial sources of prejudice to be untrue. *See United*

*States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir.1986) (§ 455(a) does not require that the court accept all allegations by the moving party as true).

hearing and reconsideration, a certiorari petition to the Supreme Court, a Rule 35 motion, and two § 2255 petitions does this claim of impropriety surface.

It is also untrue that I gave Williams any special consideration because she is African–American. All litigants are entitled to fair and equal treatment regardless of their race, and this fair and equal treatment was received by both Williams and Johnpoll in my courtroom.

Johnpoll's allegation that I "fixed" the trial transcript is also untrue. Although I often proofread at least portions of trial transcripts to catch obvious typographical errors, I have never changed any transcript in such a way that it would no longer accurately reflect the events occurring in the courtroom.

### III.

■ Since Johnpoll's motion to recuse must be denied, it is necessary to consider his petition under § 2255. For the most part, the various grounds Johnpoll raises in the instant motion were raised on direct appeal and therefore need no more than summary disposition now. *Barton v. United States,* 791 F.2d 265, 267 (2d Cir.1986) ("section 2255 cannot be employed to relitigate questions which were raised and considered on direct appeal"). Johnpoll's contentions that the securities were worthless when stolen,[3] that theft of the securities was not proved, that he was denied the rights of confrontation and compulsory process,[4] that crucial evidence was suppressed, that he was improperly ordered to cease the Swiss litigation, that the trial transcript is inaccurate, and that the court improperly charged the jury were raised and denied either on the direct appeal or in the various motions for rehearing and reconsideration, and thus may be summarily rejected now.

■ Nor do Johnpoll's new claims entitle him to the relief he seeks. Even where a claim has not been asserted on direct appeal, if it is neither constitutional nor jurisdictional, it is not cognizable under § 2255 without a showing that dismissing the claim would result in a complete miscarriage of justice. *Hardy v. United States,* 878 F.2d 94, 98 (2d Cir.1989); *Brennan v. United States,* 867 F.2d 111, 117 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989).

Johnpoll's claim under 28 U.S.C. §§ 144 and 455 falls in this category. A claim under these sections is statutory, not jurisdictional or constitutional, and therefore is

**3.** Johnpoll contends that the court should reconsider his claim that the securities were worthless when they were stolen in light of new evidence. Johnpoll's proffered new evidence is a letter dated July 25, 1985, discussing the marketability of facsimile-endorsed, street-name securities, written by the Assistant Director of the Division of Market Regulation of the Securities and Exchange Commission. For the purposes of § 2255 motions, "new evidence" is "evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered sooner." *Giacalone v. United States,* 739 F.2d 40, 43 (2d Cir.1984). Johnpoll has not given any reason why he could not have obtained this opinion letter before his trial, and therefore this "new evidence" cannot be considered.

**4.** Johnpoll also argues that a recent Supreme Court decision, *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), requires reconsideration of his confrontation clause claim. The Court in *Coy* held that the defendant's right to face-to-face confrontation was violated when a screen was placed between him and the complaining witnesses at trial so that the witnesses could avoid viewing the defendant as they gave their testimony. The recent case of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), makes it clear that the Court's decision in *Coy* does not require that Johnpoll's case be reconsidered. Under *Teague,* new law will warrant reconsideration of a case on collateral review only when the new law places the offense in question beyond the power of the state to proscribe, or the new law announces a watershed change in criminal procedure. 109 S.Ct. at 1075–76. It is undisputed that the conduct for which Johnpoll was imprisoned remains criminal. Additionally, there has been no watershed change in criminal procedure bearing on Johnpoll's confrontation clause claim. The Court was very clear in *Coy* that no fundamental change was being made. 487 U.S. at 1016, 108 S.Ct. at 2800 ("We have never doubted, therefore, that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact"). In any event, the point is moot as the Second Circuit found that Johnpoll had waived his right to confrontation. *United States v. Johnpoll, supra,* 739 F.2d at 710.

**92**

simply not cognizable under § 2255 absent a complete miscarriage of justice. In any event, as discussed above, Johnpoll's claims under these sections have no merit.

The same result must be reached with respect to Johnpoll's claim that the conspiracy count of the indictment is fatally flawed. The indictment alleges that Johnpoll conspired to violate 18 U.S.C. § 2314 and that the object of the conspiracy "was to obtain the proceeds from the sale of stolen securities and to conceal and secrete those proceeds." However, the actual object of the conspiracy as reflected in the rest of the indictment, according to Johnpoll, was to transport stolen securities, not to obtain and secrete proceeds from selling stolen securities. Johnpoll argues that the evidence introduced during trial regarding secreting and concealing the proceeds from stolen securities had nothing to do with transporting stolen securities, but was highly prejudicial to his case. This alleged evidentiary error, if indeed it was error, is neither jurisdictional nor constitutional, and did not result in a complete miscarriage of justice. Accordingly, it is not cognizable under § 2255.

Johnpoll's claim that the court did not ask all the questions requested to be put to prospective jurors likewise is not sufficient to afford relief under § 2255. It is conceded that two of the requested questions were put to the jury, and it is clear that the three requested questions were merely asking the same question in different words. The two questions put to the jury were more than adequate to protect Johnpoll's rights, and the elimination of one of the repetitive questions hardly resulted in a complete miscarriage of justice.

### IV.

In sum, Johnpoll's motion to recuse and his motion pursuant to § 2255 are without merit and are denied.

IT IS SO ORDERED.