#### UNITED STATES of America

v.

#### Yahya AHMED, Defendant.

#### No. 89 Cr. 565 (DNE).

United States District Court, S.D. New York.

March 27, 1992.

Otto Obermaier, U.S. Atty., S.D.N.Y. (Celeste L. Koeleveld, Asst. U.S. Atty., of counsel) for the U.S.

Kurzman Karelsen & Frank, New York City (Samuel A. Abady, Henry L. Saurborn, Jr., Daniel J. Kaiser, of counsel) for defendant.

## OPINION & ORDER

EDELSTEIN, District Judge:

■■■■■ Yahya Ahmed ("defendant" or "Ahmed") is charged, under Title 18, United States Code, section 3146, with failing to appear before the United States District Court for the District of Maryland, as required by the conditions of bail established in this District by Magistrate Judge Michael H. Dolinger. Defendant has moved for my recusal, or, in the alternative, for dismissal of the indictment because prosecution on the bail jumping charge violates defendant's rights under the Fifth Amendment's double jeopardy clause. If this Court denies these motions, defendant seeks a transfer of this action to the District of Maryland. For the reasons stated below, defendant's motions are denied in their entirety.[1]

### Background

In November 1987, the Government charged defendant, in the District of Mary-

---

1. The National Association of Criminal Defense Lawyers seeks leave to appear amicus curiae on behalf of defendant. District courts have broad discretion to permit or deny the appearance of amici curiae in a given case. *See Hoptowit v. Ray,* 682 F.2d 1237, 1260 (9th Cir.1982); *Pennsylvania Envtl. Defense Found. v. Bellefonte Borough,* 718 F.Supp. 431, 434 (M.D.Pa.1989). In this case, defendant's interests are adequately represented by his counsel. *See, e.g., Village of Elm Grove v. Py,* 724 F.Supp. 612, 613 (E.D.Wis. 1989). Moreover, the additional memorandum of law would not aid this Court's evaluation of defendant's motion. *See, e.g., United States v. Yonkers Contracting Co.,* 697 F.Supp. 779, 781 (S.D.N.Y.1988). Accordingly, leave to appear amicus curiae is denied.

land, with possession with intent to distribute heroin and conspiracy to possess with intent to distribute heroin. Defendant was not arrested, however, until January 25, 1988, upon entering this country at Newark International Airport. He was then presented to Magistrate Judge Dolinger in the Southern District of New York pursuant to Rule 40,[2] at which time Judge Dolinger set bail at a $40,000 personal recognizance bond. As a further condition of bail, Judge Dolinger ordered defendant to appear in the District of Maryland on February 8, 1988, to face the narcotics charges pending against him in that District.

Defendant failed to appear in the District of Maryland on February 8. As a result, a bench warrant for his arrest issued on February 10, 1988, and, on July 27, 1989, defendant was indicted in this District, pursuant to 18 U.S.C. § 3146, for violating the conditions of his bail set by Magistrate Judge Dolinger. Defendant was arrested on the February 10, 1988 bench warrant on March 30, 1991, upon entering this country at Newark International Airport. After being transferred to the District of Maryland, he stood trial on the narcotics charges from October 15, 1991 to October 24, 1991 before Honorable Norman M. Ramsey.

During the trial in the District of Maryland (the "Maryland trial"), the Government introduced evidence of defendant's failure to appear in 1988 in order to prove his consciousness of guilt of the narcotics charges contained in the November 1987 indictment. The Government did not formally charge defendant for his failure to appear in the District of Maryland on February 8, 1988. In the Maryland trial, the Government identified defendant, described the proceedings before Magistrate Judge Dolinger in January 1988, and set forth the conditions of release established by Judge Dolinger. The parties stipulated that defendant failed to appear in the District of Maryland in 1988, 1989 and 1990, and that a warrant for defendant's arrest had issued in early 1988. On October 24, 1991, Judge Ramsey, pursuant to Rule 29, dismissed all charges against defendant. Judge Ramsey found that there was insufficient evidence to link defendant to the narcotics on the date specified in the indictment, and insufficient evidence to establish a narcotics conspiracy.

After dismissal of the charges in the Maryland trial, defendant was removed to this District to face the charge of violating the conditions of his bail by failing to appear in the District of Maryland. Defendant has made several motions in this matter. Defendant seeks my recusal on the ground that I am biased against defendant's attorney, Samuel A. Abady.[3] In the alternative, defendant moves to dismiss the indictment on Fifth Amendment double jeopardy grounds, claiming that the introduction of evidence at the Maryland trial of defendant's failure to appear precludes this prosecution. If this Court denies these motions, defendant seeks a transfer of this case to the District of Maryland, pursuant to Rule 21(b).[4]

**2.** Rule 40 provides that "[i]f a person is arrested in a district other than that in which the offense is alleged to have been committed, that person shall be taken without unnecessary delay before the nearest available federal magistrate.... If held to answer, the defendant shall be held to answer in the district court in which the prosecution is pending." Fed.R.Crim.P. 40(a).

**3.** Defendant also asserts that I should reassign this case to another judge in this District pursuant to Rule 22 of the Rules for the Division of Business Among District Judges. Rule 22 provides that a party may move for reassignment, or the judge may *sua sponte* have it reassigned, "in the interest of justice or sound judicial administration." For the reasons stated in this Opinion's discussion of defendant's recusal motion, defendant's reassignment request is denied.

Moreover, in his papers, defendant recognizes that at an initial conference in this matter, Mr. Abady suggested that I transfer this case to another district judge, pursuant to Rule 17 of the Rules for the Division of Business Among District Judges, "as [I] was completely free to do as a Senior District Judge." (Defendant's Memorandum of Law in Support of the Omnibus Motion, at 6; Certificate of Good Faith, at 1). Defendant is incorrect. I am an active district judge.

**4.** Subject to denial of all three motions, defendant requests a hearing to suppress items taken from him upon his arrest. Defendant has not provided any basis, in his memoranda of law or in an affidavit, for the need to hold a suppres-

*Discussion*

## A. Recusal

■ Defendant has moved for my disqualification under Title 28, United States Code, sections 144, 455(a) and 455(b)(1), as well as under the American Bar Association's Code of Judicial Conduct and the Fifth Amendment. Specifically, defendant asserts that I developed such an antipathy towards Mr. Abady in an unrelated civil proceeding, *Schoenberg v. Shapolsky Publishers,* 140 F.R.D. 282 (S.D.N.Y.1991), that I am incapable of impartially presiding at a trial of Mr. Abady's client.

Defendant's primary basis for recusal is found in comments I made at a hearing connected with the *Schoenberg* case, held on October 15, 1991, that addressed whether to hold Mr. Abady in contempt for his conduct in the course of discovery in that action. At that hearing; I declared to Mr. Abady and his counsel that: ·

If you had any professional intelligence ... you would have gone back to your client and said I'm going to scrutinize every file you've got.... You haven't done that. That's how brazen you are. Adjourned. I don't want to hear from you or ever see you again. You are a disgrace to the profession. To come here with an argument such as you've reflected on the record. I don't think in all the years I've been here that I've ever chastised counsel as I have both of you today. Bald-faced, brazen and unprofessional. You've decided what to redact, you've decided what to submit. Where have you been? How did you ever get admitted to this court? Not even the character to say give us another opportunity to look at this. Maybe we can correct it. Maybe we're ill-advised. Maybe we don't understand. But the chutzpa, that's the term I can use that you will understand, is enormous.... You're a disgrace to this profession.... I have nothing more to hear from you. You've had your chance, you've had your argument, you've made your argument.

sion hearing. While his counsel makes the conclusory assertion that a hearing is necessary to determine the admissibility of items taken from defendant upon his arrest, defendant does not

(Transcript of October 15, 1991 hearing, at 28–29).

My comments at the *Schoenberg* contempt hearing stemmed from events described in an opinion filed on December 10, 1991, in which I ultimately found Mr. Abady in contempt. *See Schoenberg v. Shapolsky Publishers,* 140 F.R.D. 282 (S.D.N.Y.1991). In the December 10 opinion, I set forth the basis for holding Mr. Abady in contempt and imposing sanctions:

This Court issued an order compelling discovery on June 19, 1991. Mr. Abady obviously did not agree with this Court's decision, and rather than comply or seek a stay of discovery, he sought a writ of mandamus in the Second Circuit. Having no stay in place after the Court of Appeals denied the petition from the bench, Mr. Abady continued to ignore the June 19 order. Indeed, since March 13, 1991, [plaintiff's attorney] Mr. Malina had sought, without success or even a response from Mr. Abady, to induce Mr. Abady's compliance with plaintiff's discovery requests without having to resort to further litigation. While Mr. Abady attempts to blame defendants for the failure to provide discovery, it was Mr. Abady who sought a writ of mandamus rather than provide discovery. Mr. Abady also chose not to cooperate in any way with Mr. Malina throughout the discovery process. Even if defendants are at fault, Mr. Abady's conduct still merits sanctions and a finding that he is in contempt of this Court's order.

Indeed, only upon learning of plaintiff's intention to seek sanctions and to hold them in contempt, did Mr. Abady feel obliged to produce any discovery. In a transparent attempt to avoid sanctions and contempt, he handed a sheaf of photocopied documents, in no apparent order, to Mr. Malina a few hours before a conference before this Court concerning plaintiff's contempt and sanctions motion. Although Mr. Abady seeks ref-

assert the existence of disputed factual issues that require resolution in a hearing. Accordingly, defendant's request for a suppression hearing is denied.

uge in this production, it came months after this Court ordered discovery.

Even this late document production, however, had glaring defects, including the absence of many requested documents relating to this case and the presentation of the document production, with documents given in no discernible order and without any written response to plaintiff's requests. In addition, this Court finds it likely that Mr. Abady hoped that delaying production and forcing plaintiff to compel discovery would raise the emotional and financial cost of prosecuting the action, which could either encourage a favorable settlement or induce plaintiff to discontinue the action. This Court will not countenance such brazen dilatory tactics.

*Schoenberg,* at 288.[5]

On November 26, 1991, at an initial conference in this matter, I had two exchanges with Mr. Abady that are relevant to defendant's recusal motion. First, as an illustration of my supposed bias against Mr. Abady, defendant points to a comment I made after Mr. Abady suggested that I assign this case to another judge. (Transcript of November 26, 1991 Hearing, at 3–5). Defendant contends that this comment, in which I suggested to Mr. Abady that he disclose events surrounding the *Schoenberg* litigation to his client, was tantamount to urging that defendant retain different counsel. (Transcript of November 26, 1991 Hearing, at 3–5). Second, after Mr. Abady requested reassignment of this case, I

asked Mr. Abady "Do you think I am going to transfer the [*Schoenberg*] proceeding and the conclusion about you to [defendant]? The answer is no. He will get a fair judgment from this court.... [To the defendant]: Do you understand me? You can be sure of that." (Transcript of November 26, 1991 hearing, at 4).

### *1. Section 455(a) and ABA Code of Judicial Conduct Canon 3*

Defendant contends that recusal is appropriate under Title 28, United States Code, section 455(a), which provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §§ 455(a). Defendant also contends that recusal is warranted under Canon 3 of the American Bar Association's Code of Judicial Conduct. Canon 3(E)(1) provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where ... (1) the judge has a personal bias or prejudice concerning a party or a party's lawyer." Section 455(a)'s recusal standard is virtually identical to the rule espoused in Canon 3(E)(1). *See United States v. Helmsley,* 760 F.Supp. 338, 341 (S.D.N.Y.1991) (Walker, J.). The test for recusal is the same under both provisions. *See id.* Accordingly, this Opinion's discussion of section 455(a) applies with equal force to Canon 3.

---

**5.** At another point in the Opinion, this Court stated that:

   Mr. Abady's cavalier and consistent disrespect for the discovery process and this Court's orders unnecessarily delayed the litigation, created litigation for plaintiff's counsel and this Court, and manifested a disregard of Mr. Abady's duties as an officer of the court. Mr. Abady's actions are "so completely without merit" that they justify the conclusion that he acted in bad faith for an improper purpose, such as delay. Accordingly, Mr. Abady is liable for plaintiff's attorneys' fees and other expenses incurred in an effort to obtain discovery.

*Schoenberg,* at 289.

   At yet another point, this Court stated that:
   Equally clear is Mr. Abady's willful failure to comply with this order and his refusal to

provide any of the requested discovery until September 4, 1991. As previously noted, however, this September 4 production is inadequate and this Court does not find that it satisfies the June 19 order. Nor has Mr. Abady diligently attempted to provide discovery, either in accordance with this Court's June 19 order or in compliance with the discovery process. Instead, he has sought to evade being adjudged in contempt of this Court's June 19 order by providing a last minute, inadequate, flawed document production, after he had for months refused to respond to Mr. Malina's correspondence and phone calls concerning discovery. Accordingly, Mr. Abady is in contempt of this Court's June 19, 1991 order.

*Id.* at 290.

A judge is obligated not to recuse himself where grounds for recusal do not exist. *See SEC v. Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). "In deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *Drexel*, 861 F.2d at 1312; *see Helmsley*, 760 F.Supp. at 341–42. Therefore, recusal is not warranted for "remote, contingent, or speculative" reasons. *Drexel*, 861 F.2d at 1313. Any other rule would bestow upon litigants the power to force the disqualification of judges who are not to their liking. While litigants are entitled to an impartial judge, they have no right to the judge of their choice. *See id.*, at 1315.

When construing whether recusal is appropriate under section 455(a), courts are to apply an objective test that "assumes that a reasonable person *knows and understands all the relevant facts.*" *Id.* at 1313 (emphasis in original). Under such a standard, a judge must consider not only whether actual prejudice exists, but also whether the situation bears the appearance of impartiality. *See United States v. Johnpoll*, 748 F.Supp. 86, 90 (S.D.N.Y.1990), *aff'd*, 932 F.2d 956 (2d Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 229, 116 L.Ed.2d 185 (1991); *Lamborn v. Dittmer*, 726 F.Supp. 510, 516 (S.D.N.Y.1989). This rule is tempered, however, where a recusal motion is based upon alleged bias against an attorney. Except in rare circumstances, the appearance of bias against an attorney is insufficient to justify recusal. *See, e.g., In re Cooper*, 821 F.2d 833, 838–39 (1st Cir.1987); *In re Beard*, 811 F.2d 818, 830 (4th Cir.1987); *Moore v. McGraw Edison Co.*, 804 F.2d 1026, 1032 (8th Cir.1986); *United States v. Burt*, 765 F.2d 1364, 1368 (9th Cir.1985); *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1398–99 (8th Cir. 1983).[6]

In fact, it is clear that "courts have drawn a sharp distinction between alleged hostility between judge and party and alleged hostility between judge and attorney." *Helmsley*, 760 F.Supp. at 342. Recusal based on the alleged appearance of hostility between an attorney and judge, or bias by a judge against an attorney, is not warranted except in extreme or rare instances. *See id.; see also Panzardi–Alvarez v. United States*, 879 F.2d 975, 984 (1st Cir.1989) (it is rare when judge's attitude toward party's counsel is so hostile that judge is rendered unable to remain impartial toward client), *cert. denied*, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990); *United States v. Jacobs*, 855 F.2d 652, 656 n. 2 (9th Cir.1988) (recusal not warranted based on prejudice against attorney except where bias is so virulent that amounts to bias against party); *United States v. Burt*, 765 F.2d 1364, 1368 (9th

---

**6.** Section 455(a) "is broader than §§ 144 and 455(b)(1) in that it does not contain the term 'personal' and therefore, [as opposed to sections 144 and 455(b)(1),] it is not an absolute requirement that the disqualifying bias spring from an extrajudicial source." *Johnpoll*, 748 F.Supp. at 89; *see Apple*, 829 F.2d at 333; *Lamborn*, 726 F.Supp. at 514. Nevertheless, while section 455(a) does not require an extrajudicial source for the alleged bias, whether the recusal basis stems from an extrajudicial source is a relevant consideration. *See United States v. Coven*, 662 F.2d 162, 168 (2d Cir.1981), *cert. denied*, 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982). Courts generally have denied recusal motions based upon incidents occurring in a judicial setting. *See, e.g., In re IBM Corp.*, 618 F.2d 923, 929 (2d Cir.1980); *King v. United States*, 576 F.2d 432, 437 (2d Cir.), *cert. denied*, 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978); *United States v. Schwartz*, 535 F.2d 160, 165 (2d Cir. 1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581 (1977); *United States v. Bernstein*, 533 F.2d 775, 784–85 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). The source of the alleged bias in this case arose during the performance of judicial duties, which suggests that recusal is not appropriate. *See infra* pp. 204–05.

This Court also notes that defendant's memorandum of law in support of his motion incorrectly asserts that bias under section 455(a) must stem from an extrajudicial source. (Defendant's Memorandum of Law in Support of the Omnibus Motion, at 8 n. 1). As previously noted, section 455(a) contains no such requirement.

Cir.1985) (same); *Gilbert v. City of Little Rock,* 722 F.2d 1390, 1399 (8th Cir.1983) (alleged hostility between judge and attorney does not warrant recusal unless can show bias against party). The hostility or bias must be so virulent and of such magnitude that it prejudices the judge against the attorney's client. *See Drexel,* 861 F.2d at 1316; *In re Cooper,* 821 F.2d 833, 838–39 (1st Cir.1987); *In re IBM Corp.,* 618 F.2d at 932; *United States v. Wolfson,* 558 F.2d 59, 63 n. 12 (2d Cir.1977).[7]

As previously noted, defendant's recusal motion rests on my supposed bias against Mr. Abady stemming from the *Schoenberg* case. Nevertheless, a reasonable person who knows and understands all the relevant facts would not conclude that I harbor any bias against Mr. Abady, let alone one so virulent that it renders me incapable of impartially presiding at a trial of his client. Indeed, I am not prejudiced against Mr. Abady or his client.

At the contempt hearing, I briefly gave voice to my frustration and discouragement over having to hold an attorney in contempt for wilfully disregarding a court order. These comments are not tantamount to bias against Mr. Abady, let alone his client. They were made during the course of a lengthy hearing, at which Mr. Abady's counsel had ample opportunity to oppose plaintiff's contempt motion. "[I]t is not at all unusual, given the combative nature of litigation for a judge to have an attorney before him with whom the judge has had prior acerbic relations. It is one of the earliest and most fundamental lessons of judging that a judge must rule on the merits without regard to the personality of the attorney or any unpleasant experiences the judge may have had with the attorney in the past." *Helmsley,* 760 F.Supp. at 341.

My comments at the initial conference in this matter illustrate that I bear no animosity towards Mr. Abady, and that nothing that occurred in the *Schoenberg* case will affect my ability to provide defendant a fair trial in an impartial forum. At this initial conference, I stated that any prior conflict between Mr. Abady and the Court lay not in "acrimony" or "antipathy," but in "defense counsel's failure to comply with an order of this Court, clear and positive.... There is no antipathy about this." (Transcript of November 26, 1991 hearing, at 5).

Defendant contends that other remarks I made at this conference, where I suggested to Mr. Abady that he fully inform his client of events surrounding the *Schoenberg* case, amounted to a suggestion that defendant retain different counsel. In making these comments, however, I merely sought to assure that Mr. Abady would fulfill an obligation to his client by fully disclosing events surrounding the *Schoenberg* litigation. I did not refer to Mr. Abady's conduct in the prior proceeding, nor did I "import[ it] into this case," other than by seeking to ensure full disclosure. (Defendant's Reply Memorandum of Law in Support of the Omnibus Motion, at 5). My inquiry at this conference, far from evincing a prejudice against defendant, stemmed from a desire to protect him. *See, e.g., Bell v. New York State Teamsters Conference Pension & Retirement Fund,* No. 86 Civ. 0126, 1987 WL 30307, 1987 U.S.Dist. LEXIS 11904 (S.D.N.Y. Dec. 28, 1987). In fact, I unequivocally assured defendant that he will receive a fair trial. After Mr. Abady requested reassignment of this case, I asked Mr. Abady "Do you think I am going to transfer the [*Schoenberg*] proceeding and the conclusion about you to [defendant]? The answer is no. He will get a fair judgment from this court.... [To the defendant]: Do you understand me? You can be sure of that." (Transcript of November 26, 1991 hearing, at 4). *See, e.g., Panzardi,* 879 F.2d at 984 (quoting *In re Cooper,* 821 F.2d 833, 841 (1st Cir.1987)) (emphasis in original) (" '[A] court's disagreement—even one strongly stated—with *counsel* over the propriety of trial

---

7. For instance, "where a judge had disparaged an attorney's testimony, called his partner a 'name dropper' and described their conduct as 'dirty work,' recusal was not called for because even such an attitude toward *the attorney* did not reasonably call into question the judge's ability to rule impartially as to the attorney's client." *Helmsley,* 760 F.Supp. at 342 (emphasis in original) (commenting on *In re Cooper,* 821 F.2d 833, 841 (1st Cir.1987)).

tactics does not reflect an attitude of bias against the *client.*' ''); *Drexel*, 861 F.2d at 1317 ("The sharpness in colloquy between the judge and counsel . . . does not demonstrate bias.").

I bear no ill-will toward Mr. Abady or bias against him in either a personal or professional capacity. His conduct in *Schoenberg*, and his dealings with this Court in that case, will in no way influence the current proceeding. Mr. Abady's client, Mr. Ahmed, is assured of a fair trial in an impartial tribunal.

### 2. Sections 144 and 455(b)(1)

Title 28, United States Code, section 144 provides that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144. Section 455(b)(1) provides for recusal where a judge "has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1).

Sections 144 and 455(b)(1) are construed *in pari materia*, and the test of legal sufficiency of a motion for recusal is the same under both statutes. *See Apple v. Jewish Hosp. and Medical Ctr.*, 829 F.2d 326, 333 (2d Cir.1987); *In re IBM Corp.*, 618 F.2d 923, 928 (2d Cir.1980); *Johnpoll*, 748 F.Supp. at 88.[8]

To establish grounds for recusal under sections 144 and 455(b)(1), a court's bias must stem from an extrajudicial source.

*See United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). Recusal "must be based on extra-judicial conduct, not conduct arising in a trial setting. . . . [L]egal disagreements with counsel are not sufficient for judicial disqualification under § 455(b)(1), or, to state it another way, bias against a lawyer, even if found to exist, without more is not bias against his client." *Drexel*, 861 F.2d at 1314. *Accord Gilbert v. City of Little Rock*, 722 F.2d 1390, 1398 (8th Cir.1983).

The grounds for recusal in this matter stem from an exchange with Mr. Abady at a contempt hearing; in other words, the alleged source of bias derives from the performance of judicial duties, and therefore, it does not spring from an extrajudicial source. The situation is analogous to the one in *King v. United States*, 576 F.2d 432, 437 (2nd Cir.), *cert. denied*, 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978), because "[t]he grounds urged for disqualification are for the most part rulings made by [the trial judge] during the trial or statements made by him in the course of his judicial duties. . . . Nothing of this kind, what the judge has learned from or done in the proceedings before him, is any basis for disqualification; to be sufficient for disqualification the alleged bias or prejudice must be from an extrajudicial source." Moreover, the alleged source of bias is not extrajudicial simply because it arose in an unrelated proceeding involving defendant's attorney. *See, e.g., United States v. Kelley*, 712 F.2d 884, 889–90 (1st Cir.1983). Finally, even if the prior hearing is considered extrajudicial for purposes of sections 144 and 455(b)(1), this Court has ex-

---

**8.** A movant seeking recusal under section 144 must satisfy various procedural requirements. A motion under this section must be brought at the earliest possible date, the accompanying affidavit must set forth facts and reasons that support the bias charge, and the movant's attorney must file a certificate that the affidavit is made in good faith. *See* 28 U.S.C. § 144; *Lamborn*, 726 F.Supp. at 515. The attorney's certificate is crucial because a judge may not assess the accuracy of a section 144 affidavit even if he "'knows to a certainty that the allegations of personal prejudice are false.'" *Johnpoll*, 748 F.Supp. at 89 (quoting *In re Martin–Trigona*, 573

F.Supp. 1237, 1244 (D.Conn.1983)). Of course, a judge need not accept as true conclusory assertions that lack any factual support. *See Lamborn*, 726 F.Supp. at 516. In addition, a judge may place allegations in context and examine surrounding circumstances. *See Farkas v. Ellis*, 768 F.Supp. 476, 478 (S.D.N.Y.1991).

The Second Circuit has not yet decided whether these requirements govern section 455(b)(1). *See Apple*, 829 F.2d at 333. Nevertheless, defendant has complied with the procedural aspects of section 144, and thus, he has also satisfied any procedural obligations associated with section 455(b)(1).

plained that it bears no bias or prejudice against Mr. Abady or his client. *See supra* at pp. 202–04. Accordingly, recusal is not appropriate.

*3. Recusal under the Fifth Amendment*

■ This Opinion implicitly addresses defendant's Fifth Amendment claim in its discussion of the recusal statutes. A rejection of defendant's claims under sections 144 and 455 "*a fortiori* defeats [his] due process allegations." *In re IBM Corp.*, 618 F.2d 923, 932 n. 11 (2d Cir.1980). The recusal statutes were designed to protect Fifth Amendment guarantees, and therefore, "it would be anomalous to hold that a claim under the statutes insufficient on its merits could nevertheless satisfy the constitutional standard." *Id.* (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)). Because this Court has rejected defendant's claims under the recusal statutes, it also rejects his claim for recusal under the Fifth Amendment.

### B. Permissibility of Prosecution under the Fifth Amendment

The double jeopardy clause of the Fifth Amendment provides that "[n]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause protects against a second prosecution for the same offense after conviction or acquittal, and against multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

Courts must engage in a two-step inquiry to determine the permissibility of a subsequent prosecution. *See United States v. Calderone*, 917 F.2d 717, 721 (2d Cir.1990). Courts first apply the traditional test formulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). If a subsequent prosecution is permissible under *Blockburger*, a court must still assess whether the Supreme Court's decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), prohibits a second prosecution.

This Court finds, and the parties do not appear to dispute, that prosecution of defendant in this case is permissible under *Blockburger*. In *Blockburger*, the Supreme Court held that separate prosecutions are prohibited where offenses have identical statutory elements or where one is a lesser included offense of the other. *See Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The *Blockburger* test focuses on the elements of the crimes, and "[i]f each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616 (1975) (citation omitted).

■ Defendant was charged in the Maryland trial with various violations of the narcotics laws of the United States. In this case, defendant has been charged with failing to appear in the District of Maryland, in violation of the conditions of bail established by Magistrate Judge Dolinger. It is beyond reasonable dispute that the charges in the two indictments require proof of distinct facts. Accordingly, this prosecution is appropriate under *Blockburger*.

Defendant asserts, however, that *Grady* bars prosecution of defendant on the bail violation charge. Defendant asserts that because the Government, in the Maryland trial, introduced evidence surrounding defendant's failure to appear in the District of Maryland to support the narcotics charges, a separate prosecution for violating the conditions of bail is unconstitutional.

"*Grady* significantly altered the jurisprudential landscape of double jeopardy, supplementing the traditional inquiry re-

quired by *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and its progeny." *United States v. Gambino,* 920 F.2d 1108, 1112 (2d Cir. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991). In *Grady,* the Supreme Court held that "the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* 495 U.S. at 510, 110 S.Ct. at 2087.

The Court was careful to distinguish between *Grady*'s "same conduct" test and a "same evidence" standard, which the *Grady* Court did not adopt. The Court stated that the test in *Grady* was

> not an 'actual evidence' or 'same evidence' test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. As we have held, the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding.

*Id.* at 521–22, 110 S.Ct. at 2093. In explaining this standard, the Sixth Circuit stated that

> The Supreme Court did not hold that no conduct shown by the evidence in the earlier trial may be used to sustain the charges in the later trial. What is forbidden is the establishment of essential elements of the offense charged in the later prosecution by evidence of the conduct *for which the defendant was convicted* in the earlier prosecution. It is not the same conduct, per se, that may not be used, but the particular unlawful conduct that was the basis of the first conviction.

*United States v. Evans,* 951 F.2d 729, 737 (6th Cir.1991) (emphasis in original) (citation ŏmitted); *see, e.g., McIntyre v. Trickey,* 938 F.2d 899, 905–06 (8th Cir.1991).

With this in mind, it is apparent that prosecution of defendant for failing to appear in the District of Maryland is permissible under *Grady.* The conduct that the State attempted to prove in the Maryland trial, and the conduct for which defendant was prosecuted, involved narcotics violations. Accordingly, *Grady* might bar a subsequent prosecution that relied, for instance, on proof of conduct constituting violations of the narcotics laws. In the present case, however, defendant is charged with conduct—violating a condition of bail—that is wholly unrelated to the narcotics violations for which defendant was charged and prosecuted in the Maryland trial.

■ Indeed, the only connection between the Maryland trial and this case is that evidence that was introduced in the former proceeding to show consciousness of guilt may be used in this one to support a bail jumping charge. The Government's use of evidence in one proceeding, standing alone, does not preclude a subsequent proceeding in which that evidence will again be introduced. *See Grady,* 495 U.S. at 521–22, 110 S.Ct. at 2093. The crucial inquiry, and the protection offered by *Grady,* focuses on previously prosecuted conduct, not previously introduced evidence. Because defendant has not previously been prosecuted for the conduct with which he is currently charged, prosecution on the bail violation charge is permissible under the Fifth Amendment.

■ Defendant also claims that this prosecution is impermissible under the doctrine of collateral estoppel, which is a component of the Fifth Amendment's double jeopardy clause. *See Dowling v. United States,* 493 U.S. 342, 347, 110 S.Ct. 668, 671, 107 L.Ed.2d 708 (1990); *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *United States v. Friedberg,* 766 F.Supp. 87, 90 (E.D.N.Y.), *aff'd,* 948 F.2d 1277 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992). The doctrine provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194. Under this rule, a defendant seeking to invoke collateral estoppel must "demonstrate that the issue whose relitigation [defendant] seeks to foreclose was actually

decided in the first proceeding." *Dowling,* 493 U.S. at 350, 110 S.Ct. at 673.

Mr. Ahmed has not met this burden. Judge Ramsey granted defendant's Rule 29 motion in the Maryland trial based on insufficient evidence to link defendant to the narcotics on the date specified in the indictment, and insufficient evidence to show a narcotics conspiracy. There is no indication from Judge Ramsey's ruling that he "actually decided" that defendant had not violated bail conditions—an issue that was not before the judge or jury in the Maryland trial. "As the record stands, there is nothing at all that persuasively indicates that the question of [bail jumping] was at issue and was determined in [defendant's] favor at the prior trial." *Dowling,* 493 U.S. at 352, 110 S.Ct. at 674.

C. Transfer to the District of Maryland

■■■■ Finally, defendant has moved to transfer this action to the District of Maryland under Rule 21(b), which provides for such a transfer "[f]or the convenience of parties and witnesses, and in the interest of justice." Fed.R.Crim.P. 21(b). Among the factors to consider in assessing a Rule 21(b) motion are:

(a) location of the defendants; (b) location of the possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential for disruption of defendants' businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (i) docket conditions of each potential district; and (j) any other special circumstance that might bear on the desirability of transfer.

*United States v. Maldonado–Rivera,* 922 F.2d 934, 966 (2d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991). No single factor is dispositive, but rather courts should "strike a balance and determine which of the factors are of greatest importance." *United States v. Stephenson,* 895 F.2d 867, 875 (2d Cir.1990).

Transfer is not appropriate in this case. Defendant is a resident of New York, who currently is present in New York and who has retained New York based defense counsel. Moreover, most of the relevant witnesses and documents are in New York, because while defendant violated bail conditions by failing to appear in Maryland, the conditions of bail were established in this District. Furthermore, defendant concedes that several factors do not favor either district, such as expenses incurred upon denial of transfer and the court's accessibility. Similarly, the events supporting the current charge occurred both in this District and in Maryland. While defendant asserts that docket conditions in this District favor a transfer to the District of Maryland, this Court has no basis to assess docket conditions in the District of Maryland, and, in any event, defendant is assured of a speedy trial before this Court.

Finally, defendant asserts that his previous trial on narcotics violations in the Maryland trial, where the Government introduced evidence surrounding defendant's failure to appear, is a special circumstance that compels a transfer to the District of Maryland. Defendant's arguments rests on the assumption that Judge Ramsey would hear the case, and that his familiarity with the case would promote judicial economy. While attempting to foster judicial economy is a worthy endeavor, transferring this case will not result in saving any judicial resources. Even if Judge Ramsey heard this matter, the Government will present evidence surrounding the bail jumping charge to a jury, which must hear the Government's evidence in its entirety. In addition, this case is not at all complex, and familiarity with the events surrounding this matter is not necessary. Accordingly, defendant's motion to transfer this action to the District of Maryland is denied.

*Conclusion*

For the reasons stated above, defendant's motions are denied in their entirety. SO ORDERED.