UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re APPLICATION CIX OF the INDEPENDENT ADMINISTRATOR.

No. 88 Civ. 4486 (DNE).

United States District Court, S.D. New York.

Sept. 2, 1993.

**280**

Charles M. Carberry, Investigations Officer of the Intern. Broth. of Teamsters, (Celia A. Zahner, of counsel).

Mary Jo White, U.S. Atty., S.D.N.Y. (Christine H. Chung, Asst. U.S. Atty., of counsel), for the U.S.

Lawrence V. Kelly, New York City, for respondents.

## *OPINION AND ORDER*

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America (the "Government") against defendants International Brotherhood of Teamsters (the "IBT" or the "Union") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The Consent Decree provides for three Court-appointed officials: the Independent Administrator to oversee the Consent Decree's remedial provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to oversee the electoral process that culminated in the 1991 election for International Officers. One goal of the Consent Decree is to rid the IBT of the influence of organized crime through the disciplinary provisions.

Application CIX presents for this Court's review the decision of the Independent Administrator finding that the Investigations Officer had proven charges filed against Walter Caldwell ("Caldwell"), Henry Martinelli ("Martinelli"), Carl Purpura ("Purpura"), Greg Rasczyk ("Rasczyk") and Gary Richardson ("Richardson"), Executive Board members of IBT Local Union ("Local") 945. Local 945 is located in Wayne, New Jersey. Only Respondents Rasczyk and Richardson have appealed the Independent Administrator's decision.

**1.** References to the "IBT Constitution" pertain to the Constitution of the International Brotherhood of Teamsters adopted by the 24th Interna-

## *BACKGROUND*

The Investigations Officer alleged that Respondents brought reproach upon the IBT in violation of Article II, Section 2(a) and Article XIX, Sections 7(b)(1), (2) and (3) of the IBT Constitution,[1] and breached their fiduciary duties to the members of IBT Local 945, by embezzling and unlawfully converting to the benefit of others the funds of Local 945. Article II, Section 2(a) is the IBT membership oath, which provides in relevant part that every IBT member shall "conduct himself or herself in a manner so as not to bring reproach upon the Union." Article XIX, Section 7(b) is a non-exhaustive list of disciplinary charges that may be filed against IBT members. Sanctionable conduct under Article XIX, Section 7(b) includes:

(1). Violation of any specific provision of the Constitution, Local Union Bylaws or rules of order, or failure to perform any of the duties specified thereunder.

(2). Violation of oath of office, or of the oath of loyalty to the Local Union and the International Union.

(3). Breaching a fiduciary obligation owed to any labor organization by any act of embezzlement or conversion of union's funds or property.

IBT Constitution, Article XIX, §§ 7(b)(1)–(3).

On June 12, 1992, Joseph Abbate ("Abbate"), then president of Local 945, invoked his Fifth Amendment privilege against self-incrimination, refusing to answer certain questions posed by the Investigations Officer during a sworn in-person examination. On June 19, 1992, Anthony Rizzo ("Rizzo"), then secretary-treasurer of Local 945, also invoked his Fifth Amendment privilege against self-incrimination and refused to answer any questions asked by the Investigations Officer during a sworn in-person examination. On June 15, 1992 and June 19, 1992, the Investigations Officer wrote to each Respondent informing them that Abbate and Rizzo had refused to answer questions concerning, *inter alia*, their association with members of organized crime and whether they had received money from employers of Local 945

tional Convention, June 24–28, 1991, under which Respondents were charged.

members. These letters formally advised Respondents that using Local 945's funds to pay Abbate's or Rizzo's legal fees "may well be in violation of the IBT[ ] [C]onstitution's prohibition on embezzlement and its restriction on the payment of legal fees." *Ind.Admin.Dec.* at 4.

On June 23, 1992, Local 945's Executive Board held a meeting attended by Caldwell, Martinelli, Purpura, Rasczyk, Richardson, Abbate, Rizzo, the Local's counsel and others. At this meeting, Rizzo informed Respondents that he would be removed or forced to resign as an officer of Local 945 as a result of his refusal to answer the Investigations Officer's questions. Both Abbate and Rizzo also refused to answer questions posed by Respondents at the meeting. Respondents thus decided that the Executive Board should file charges against Abbate and Rizzo for their refusal to answer questions at the Executive Board meeting. Accordingly, the Local's counsel was instructed to draft charges against Abbate and Rizzo.

The Independent Administrator found, and Respondents do not dispute, that at the June 23, 1992 meeting of Local 945's Executive Board,

> [d]espite Respondents' knowledge that Abbate and Rizzo had refused to answer the Investigations Officer's questions, despite Abbate's and Rizzo's refusal to answer any of Respondents' questions regarding their actions, and despite Respondents' recognition that internal Union charges would need to be filed against Abbate and Rizzo, Respondents approved the Local's payment of the legal fees incurred by Abbate and Rizzo in connection with their appearances before the Investigations Officer. The amount totalled $3,231.25.

*Ind.Admin.Dec.* at 6–7. The minutes of the June 23, 1992 meeting reflect that, before Respondents approved the disbursement to cover Abbate's and Rizzo's legal fees, counsel for Local 945 orally informed the Executive Board that, in his opinion, payment of the fees was permissible. *Id.* at 7. On June 26, 1992, pursuant to Executive Board approval, a check in the amount of $3,231.25 was issued by Local 945 to cover Abbate's and Rizzo's legal expenses.

Pursuant to paragraph F.12(C) of the Consent Decree, the Independent Administrator must decide disciplinary hearings using a "just cause" standard. The Investigations Officer has the burden of establishing just cause by a preponderance of the evidence. December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y.1990). After conducting a hearing at which Respondents were represented by counsel, and receiving briefs from the parties, the Independent Administrator issued a sixteen-page decision. The Independent Administrator found that the Investigations Officer had sustained his burden of proving the charges filed against Respondents and that Respondents acted with fraudulent intent to deprive Local 945 of funds when they approved the payment of Abbate's and Rizzo's legal fees. *See Ind.Admin. Dec.* at 7–8.

As a penalty for this conduct, the Independent Administrator ordered Respondents to "remove themselves from all of their IBT-affiliated officer positions and draw no money or compensation therefrom." *Ind.Admin. Dec.* at 14. In addition, the Independent Administrator permanently barred Respondents from holding such positions in the future and prohibited Respondents from obtaining future employment, consulting or other work with the IBT, or any IBT-affiliated entity. *Id.* The Independent Administrator allowed Respondents to retain their IBT membership, however, so that they may secure employment as rank-and-file members with non-IBT-affiliated entities that have collective bargaining agreements with the IBT. *Id.* at 14–15. Furthermore, the Independent Administrator exercised his authority to impose sanctions upon Respondents' employee benefits. *See* December 28, 1990 Memorandum & Order, 753 F.Supp. 1181 (S.D.N.Y. 1990), *aff'd*, 941 F.2d 1292 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991). The Independent Administrator prohibited the IBT or any affiliated entity from contributing funds to sustain benefits or Third–Party Plans available to Respondents by virtue of their serving, or having served, as officers of the IBT or any

IBT-affiliate.[2] Finally, the Independent Administrator ordered that the IBT and IBT-affiliated entities not pay any legal expenses incurred by Respondents in connection with the instant disciplinary action. *See United States v. Local 1804–1*, 732 F.Supp. 434, 437 (S.D.N.Y.1990). The Independent Administrator stayed imposition of penalties pending this Court's review.

Respondents Rasczyk and Richardson appeal the decision of the Independent Administrator. Respondents Caldwell, Martinelli, and Purpura have not appealed the Independent Administrator's decision. This Court finds that the Independent Administrator's decision is fully supported by the evidence, and that Rasczyk's and Richardson's arguments to the contrary are devoid of merit. Furthermore, the Court finds that the penalty imposed by the Independent Administrator is fully supported by the evidence. Accordingly, the opinion of the Independent Administrator is affirmed in its entirety and the stay imposed by the Independent Administrator is dissolved.

## DISCUSSION

 In reviewing decisions of the Independent Administrator, it is well settled that the findings of the Independent Administrator "are entitled to great deference." *United States v. IBT*, 905 F.2d 610, 616 (2d Cir. 1990), *aff'g*, 743 F.Supp. 155 (S.D.N.Y.1990). This Court will overturn the findings of the Independent Administrator when it determines that they are, on the basis of all the evidence, "arbitrary or capricious." *United States v. IBT*, 964 F.2d 1308, 1311 (2d Cir. 1992); August 27, 1990 Opinion & Order, 745 F.Supp. 908, 911 (S.D.N.Y.1990), *aff'd*, 941 F.2d 1292 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991); March 13, 1990 Opinion & Order, 743 F.Supp. 155, 165 (S.D.N.Y.1990), *aff'd*, 905 F.2d 610 (2d Cir.1990); *see* July 14, 1992 Opinion & Order, 803 F.Supp. 748, 753–55 (S.D.N.Y.1992); July 13, 1992 Opinion & Order, 803 F.Supp. 740, 745–46 (S.D.N.Y.1992); July 9, 1992 Opinion & Order, 803 F.Supp.

734, 737–38 (S.D.N.Y.1992); May 15, 1992 Opinion & Order, 792 F.Supp. 1346, 1353 (S.D.N.Y.1992); April 27, 1992 Memorandum & Order, 791 F.Supp. 421, 425 (S.D.N.Y. 1992); February 11, 1992 Memorandum & Order, 787 F.Supp. 345, 350 (S.D.N.Y.1992); January 20, 1992 Memorandum & Order, 782 F.Supp. 256, 259 (S.D.N.Y.1992); January 16, 1992 Memorandum & Order, 782 F.Supp. 238, 241 (S.D.N.Y.1992); November 8, 1991 Memorandum & Order, *slip op.*, at 4–5, 1991 WL 243268 (S.D.N.Y.1991); October 29, 1991 Opinion & Order, 776 F.Supp. 144, 152–53 (S.D.N.Y.1991), *aff'd*, 954 F.2d 801 (2d Cir. 1992), *cert. denied,* — U.S. —, 112 S.Ct. 2993, 120 L.Ed.2d 870 (U.S.1992); October 25, 1991, Order, *slip op.*, at 4–5 (S.D.N.Y. 1991); October 24, 1991 Memorandum & Order, 777 F.Supp. 1133, 1136 (S.D.N.Y.1991); October 16, 1991 Memorandum & Order, 777 F.Supp. 1130, 1132 (S.D.N.Y.1991), *aff'd*, 964 F.2d 1308 (2d Cir.1992); October 11, 1991 Memorandum & Order, 777 F.Supp. 1127, 1128 (S.D.N.Y.1991), *aff'd*, 956 F.2d 1161 (2d Cir.1992); October 9, 1991 Memorandum & Order, 777 F.Supp. 1123, 1125 (S.D.N.Y. 1991); August 14, 1991 Memorandum & Order, *slip op.*, at 4, 1991 WL 161084 (S.D.N.Y. 1991); July 31, 1991 Memorandum & Order, *slip op.*, at 3–4, 1991 WL 150226 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 1161 (2d Cir.1992); July 18, 1991 Memorandum & Order, *slip op.*, at 3–4, 1991 WL 136030 (S.D.N.Y.1991), *aff'd*, 956 F.2d 1161 (2d Cir.1992); July 16, 1991 Opinion & Order, *slip op.*, at 3–4, 1991 WL 136029 (S.D.N.Y.1991); June 6, 1991 Opinion & Order, 775 F.Supp. 90, 93 (S.D.N.Y.1991), *aff'd in relevant part*, 948 F.2d 1278 (2d Cir.1991); May 13, 1991 Memorandum & Order, 764 F.Supp. 817, 820–21 (S.D.N.Y.1991); May 9, 1991 Memorandum & Order, 764 F.Supp. 797, 800 (S.D.N.Y.1991) *aff'd,* 956 F.2d 1161 (2d Cir.1992); May 6, 1991 Opinion & Order, 764 F.Supp. 787, 789 (S.D.N.Y.), *aff'd*, 940 F.2d 648 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991); December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y.1990); September 18, 1990 Opinion & Order, 745 F.Supp. 189, 191–92 (S.D.N.Y.1990); January

---

**2.** Consistent with prior rulings in this case, the Independent Administrator did not alienate Re-

spondent's vested benefits.

17, 1990 Opinion & Order, 728 F.Supp. 1032, 1045–57, aff'd, 907 F.2d 277 (2d Cir.1990).

Although Richardson's and Rasczyk's "Affidavits In Support of Appeal"[3] are somewhat unclear, it appears that Respondents seek to appeal the Independent Administrator's determination on three grounds. First, Respondents claim that the Independent Administrator's decision is arbitrary and capricious because there is insufficient evidence in the record to support the charge filed by the Investigations Officer. Second, Respondents argue that they should not be penalized for embezzling or converting Local 945's funds because the funds that were used to pay Abbate's and Rizzo's legal fees have been replaced. Third, Respondents restate their defense that they should be shielded from discipline because they relied on the advice of counsel in paying Abbate's and Rizzo's legal expenses. In addition, without providing legal or factual support, Respondents request that I recuse myself from this appeal.

## 1. Arguments On Appeal

### A. Sufficiency Of The Evidence

■ The IBT Constitution subjects to discipline members who embezzle or convert Union funds. See IBT Constitution, Art. XIX, § 7(b)(3). Proving embezzlement requires the Investigations Officer to show that Respondents acted with fraudulent intent to deprive the Union of its funds. See Oct. 9, 1991 Memorandum & Order, 777 F.Supp. 1123 (S.D.N.Y.1991), aff'd, United States v. IBT, 978 F.2d 706 (2d Cir.1992); see also June 6, 1991 Opinion & Order, 775 F.Supp. 90 (S.D.N.Y.1990), aff'd in relevant part, United States v. IBT, 948 F.2d 1278 (2d Cir.1991); United States v. Welch, 728 F.2d 1113, 1118 (8th Cir.1984). Fraudulent intent may be inferred from circumstantial evidence. See July 30, 1991 Memorandum & Order, 138 F.R.D. 50 (S.D.N.Y.1991); see also United States v. Local 560, 780 F.2d 267,

284 (3d Cir.1985). For example, causing a Local to expend funds while violating an oath or duty imposed by the IBT Constitution, the Local's Bylaws, or other applicable law, raises the inference of an intent to defraud. See Feb. 11, 1992 Memorandum & Order, 787 F.Supp. 345 (S.D.N.Y.1992), aff'd in relevant part, 978 F.2d 68, 73 (2d Cir.1992).

■ Ample evidence supports the Independent Administrator's determination that Respondents embezzled and unlawfully converted Local 945's funds. Article X, Section 10.02 of Local 945's Bylaws provides that the Local may reimburse an officer for reasonable attorneys fees in connection with a civil matter, provided such proceedings "terminated without an adjudication or admission of wrongdoing." As of July 23, 1992, the proceedings against Abbate and Rizzo had not terminated without adjudication or admission of wrongdoing.[4] Thus, Respondents violated Local 945's Bylaws by authorizing the use of Local 945's funds to pay Abbate's and Rizzo's legal expenses.

Moreover, Respondents' actions violated the IBT Constitution. Article IX, Section 9(c) makes Executive Board approval of the payment of legal fees "subject to the approval of a majority of the members present and voting at a regular meeting." In patent disregard of this requirement, Respondents neither solicited nor received general approval from the members of Local 945 for the payment of Abbate's and Rizzo's legal expenses. Therefore, Respondents' authorization of payment of these legal expenses from Local 945's coffers violated the IBT Constitution.

■ Respondents—members of the Executive Board of Local 945—were undoubtably familiar with the various constitutional provisions and Bylaws at issue in this case. Indeed, officers of a Local are under an affirmative duty to comply with Local Union Bylaws, provisions of the IBT Constitution, and

---

3. Respondents have not filed briefs in support of their appeal. Rather, Respondents Richardson and Rasczyk filed affidavits setting forth the grounds for their appeal. The text of these affidavits is identical.

4. In order to resolve the charges against him, Abbate entered into an agreement whereby he permanently resigned from the IBT and all IBT-affiliated positions. Similarly, Rizzo entered into an agreement whereby he permanently resigned from the IBT and all IBT-affiliated positions. These agreements were accepted by the Independent Administrator, and approved by this Court, on August 13, 1992.

other applicable federal labor law. Feb. 9, 1993 Opinion & Order, 814 F.Supp. 1165 (S.D.N.Y.1993). Even absent such knowledge, the Investigations Officer had placed Respondents on notice that reimbursement of Abbate's and Rizzo's legal expenses might violate Union rules. In the Investigations Officer's letters to Respondents, the Investigations Officer explicitly stated that payment of Abbate's and Rizzo's attorney fees might be considered embezzlement. Each Respondent received these letters *prior* to the July 23, 1992 Executive Board meeting. Respondents were therefore on both actual and constructive notice that payment of Abbate's and Rizzo's legal fees was problematic.

By authorizing the payment of legal expenses in violation of Local 945's Bylaws and the IBT Constitution, Respondents acted with the intend to defraud the Local. Indeed, Respondents' conduct is susceptible to no innocent interpretation. The record before me supports the Independent Administrator's finding of fraudulent intent and, therefore, the Independent Administrator's decision is not arbitrary or capricious. Respondents' argument as to the sufficiency of the evidence is without merit.

### B. *Return Of Funds To Local 945*

■ Respondents next contend that they should not be subject to discipline because any funds used to pay Abbate's and Rizzo's legal fees have been reimbursed. In so arguing, Respondents effectively claim that repayment of embezzled funds negates the embezzlement. Thus, according to Respondents' argument, Union officials may embezzle a Local's money, wait to see if charges are filed and, if charges are filed, Respondents can still avoid discipline upon reimbursing the Local.

Unfortunately for Respondents, creating such a safe haven is unacceptable in light of the Consent Decree's remedial purpose. Local 945's Executive Board flouted the Bylaws of their Local as well as provisions of the IBT Constitution. To permit such actions to go unpunished merely because, having been caught with their fingers in the cookie jar, Respondents decided to drop the cookie, defies common sense and is antithetical to the purpose of the Consent Decree. As the In-

dependent Administrator properly found, "[t]his 'wait and see' defense flies in the face of the fiduciary obligations of Union officers." *Ind.Admin.Dec.* at 13.

### C. *Reliance On Advice Of Counsel*

■ Respondents' counsel argued before the Independent Administrator that Respondents relied on the oral opinion of Ira Drogin, Esq.—then counsel to Local 945—in paying Abbate's and Rizzo's legal expenses. Mr. Drogin apparently advised Respondents that the Local could pay any legal expenses incurred by Abbate and Rizzo prior to the date that charges were filed against these individuals by the Investigations Officer. Respondents thus averred that they should not be disciplined for their violation of Local 945's Bylaws and the IBT Constitution. The Independent Administrator rejected this reliance defense. Respondents have reiterated this argument on appeal. *See* Affidavit of Respondent Rasczyk, at 23 (emphasis in original) ("While I may have been naive or even '*dumb*' in relying upon the legal advice of a former legal counsel to Local 945 in authorizing the Local's payment of these legal fees, I did so, in good faith and reliance thereon, and with *no* wrongful intent on my part."); Affidavit of Respondent Richardson, at 23 (same). Respondents argue that the Independent Administrator's decision not to credit their reliance defense was arbitrary and capricious.

Restated, Respondents argue that they should not be disciplined for their violations because their alleged reliance on the advice of counsel negates intent and, therefore, Respondents could not have acted with fraudulent intent to deprive Local 945 of its funds. The proposition espoused by Respondents is valid: Reasonable reliance on the advice of counsel can negate intent and, therefore, can exculpate a charged individual. A proponent of this defense must, however, demonstrate actual reliance on the advice of counsel and that such reliance was reasonable. Respondents have failed to make either showing.

Respondents have not shown that they relied on the advice of counsel. The Independent Administrator found that "none of the Respondents ever testified that they relied

on the advice of counsel, or even that they believed the advice to be reasonable or competent." *Ind.Admin.Dec.* at 8. While Respondents did receive advice from counsel prior to their approval of the payment of Abbate's and Rizzo's legal fees, they also received letters from the Investigations Officer that contained conflicting conclusions on this issue. The Independent Administrator's determination that Respondents did not prove reliance is neither arbitrary nor capricious.

Even assuming, *arguendo*, that Respondents could demonstrate actual reliance, their reliance defense is still deficient. It is axiomatic that "reliance on the advice of counsel does not negate the element of intent unless such reliance is reasonable." March 5, 1993 Opinion & Order, 817 F.Supp. 337, 341–42 (S.D.N.Y.1993). As the Independent Administrator properly held, "the opinion given by counsel ... was unreasonable on its face." *Id.* The Independent Administrator stated that:

> Counsel's advice leads first to the absurd conclusion that even though a Local Union officer has been charged by the Investigations Officer with violating his fiduciary duty to the IBT, the Local may pay for the legal expense incurred by that officer prior to the filing of the actual charge. In other words, counsel suggests that the Local can pay for the costs incurred in committing the wrong, but cannot pay for the defense of the wrong.... According to counsel, [this remains true] even where, as here, the Local recognizes and agrees that it should bring its own internal disciplinary charges against the officer. Such a result defies any sound reasoning.

*Ind.Admin.Dec.* at 9. In addition, the Bylaws and IBT constitutional provisions reviewed by Mr. Drogin are facially explicit and susceptible to interpretation by laymen. In light of this fact, and because Respondents had been put on notice by the Investigations Officer that payment of Abbate's and Rizzo's legal fees might violate these provisions, Respondents' alleged blind reliance on Mr. Drogin's incorrect advice was unreasonable. Thus, even if Respondents were able to show reliance, such unreasonable reliance would not negate the element of intent. As such, Respondents' reliance defense must fail. The Independent Administrator's rejection of Respondents' reliance defense was neither arbitrary nor capricious.

### 2. *Recusal Request*

■ Respondents have requested that I recuse myself from hearing this appeal. Respondents do not support their request with any case law, nor do they list specific facts that might show recusal to be appropriate. Indeed, Respondents do not even identify which recusal statute they believe is applicable. Rather, Richardson's and Rasczyk's argument for recusal is that I am biased in favor of the Independent Administrator or, alternatively, against Respondents. *See* Affidavit of Respondent Rasczyk, at 22; Affidavit of Respondent Richardson, at 22. Respondents contend that, because of my "prior conduct of proceedings in the above-captioned action ... Respondent[s] obviously can have *no* basis to reasonably conclude that [they] will receive an objective, fair and impartial determination of the issues raised on appeal." Affidavit of Respondent Rasczyk, at 23 (emphasis in original); Affidavit of Respondent Richardson, at 23 (emphasis in original). In sum, Respondents aver that

> [t]hree (3) of the Respondents affected by Judge Lacey's Decision have simply resigned in disgust from membership on Local 945's Executive Board because ... they also feel that an appeal would be to *no* avail without an objective, fair and unbiased review and that they cannot get such a hearing by the District Court. As an American, I must disagree with those Respondents, but I do not believe that I can obtain an objective, fair and unbiased hearing of these issues by Judge Edelstein.

Affidavit of Respondent Rasczyk, at 24 (emphasis in original); Affidavit of Respondent Richardson, at 24 (emphasis in original). Respondents are incorrect; I harbor no bias against them, and I am not prejudiced in favor of the Independent Administrator.

■ A judge is obligated not to recuse himself where grounds for recusal do not exist. *See SEC v. Drexel Burnham Lambert*

*Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988). "In deciding whether to recuse himself, [a] judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *Drexel*, 861 F.2d at 1312; *see United States v. Helmsley*, 760 F.Supp. 338, 341–42 (S.D.N.Y.1991). Therefore, recusal is not warranted for "remote, contingent, or speculative" reasons. *Drexel*, 861 F.2d at 1313. Any other rule would bestow upon litigants the power to force the disqualification of judges who are not to their liking; while litigants are entitled to an impartial judge, they have no right to the judge of their choice. *See Drexel*, 861 F.2d at 1315.

Title 28, United States Code, Section 144 provides that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144. A movant seeking recusal under Section 144 must satisfy various procedural requirements. A motion under this Section must be brought at the earliest possible date, the accompanying affidavit must set forth facts and reasons that support the bias charge, and the movant's attorney must file a certificate that the affidavit is made in good faith. *See* 28 U.S.C. § 144; *Lamborn v. Dittmer*, 726 F.Supp. 510, 515 (S.D.N.Y.1989). The attorney's certificate is crucial because a judge may not assess the accuracy of a Section 144 affidavit even if he " 'knows to a certainty that the allegations of personal prejudice are false.' " *United States v. Johnpoll*, 748 F.Supp. 86, 89 (S.D.N.Y.1990) (quoting *In re Martin–Trigona*, 573 F.Supp. 1237, 1244 (D.Conn.1983)). Of course, a judge need not accept as true conclusory assertions which lack any factual support. *See Lamborn*, 726 F.Supp. at 516. In addition, a judge may place allegations in context and examine surrounding circum-

stances. *See Farkas v. Ellis*, 768 F.Supp. 476, 478 (S.D.N.Y.1991). Finally, under Section 144, a court's bias must stem from an extrajudicial source. *See United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). "[T]he alleged bias must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge has learned from his participation in the case." *Grinnell*, 384 U.S. at 583, 86 S.Ct. at 1710.

Title 28, United States Code, Section 455 provides that "(a) [a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned ... [or] (b) [w]here he has a personal bias or prejudice concerning a party." 28 U.S.C. §§ 455(a)–(b). In enacting Section 455(a), which mandates recusal where there exists a factual basis for doubting a judge's impartiality, Congress hoped to foster public confidence in the judiciary. *See Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 847–48, 108 S.Ct. 2194, 2195, 100 L.Ed.2d 855 (1988). Section 455 conforms to Canon 3(C)(1)[5] of the ABA Code of judicial conduct. *See Helmsley*, 760 F.Supp. at 341.

When construing whether recusal is appropriate under Section 455(a), courts are to apply an objective test that "assumes that a reasonable person *knows and understands all the relevant facts*." *Drexel*, 861 F.2d at 1313 (emphasis in original). Under such a standard, a judge must consider not only whether actual prejudice exists, but must also determine whether there exists the appearance of impartiality. *See Johnpoll*, 748 F.Supp. at 90; *Lamborn*, 726 F.Supp. at 516.

Respondents have failed to allege any facts that would support a finding that recusal is appropriate. Respondents have wholly failed to satisfy the requirements of Section 144. They have not even attempted to set forth facts and reasons that support the bias charge, and Respondents' attorney has failed to file a certificate that Respondents' affidavit alleging bias was made in good faith.

---

5. Canon 3(C)(1) provides that "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably questioned, includ-

ing but not limited to instances where ... (1) he has a personal bias or prejudice concerning a party."

Finally, Respondents do not point to an extrajudicial source for my alleged prejudice. Thus, Respondents' recusal motion does not satisfy the threshold requirements of Section 144. Similarly, Respondents have failed to satisfy Section 455. Respondents have not shown that my impartiality might reasonably be questioned nor, as I already have stated, have Respondents submitted any facts that would cast doubt on my impartiality. In fact, I am not biased or prejudiced in favor, or against, any party to, or participant in, this action. As such, Respondents' recusal request must be denied.

One further comment is in order. Respondents' attorney, Lawrence V. Kelly, has apparently injected this recusal motion into Respondents' affidavits as a "throw away" argument. I call this a "throw away" argument because Respondents have alleged bias, but have not cited to any law on point or come forward with a single fact bolstering this charge. Such flippant use of the charge of bias—a very serious charge—diminishes our judicial system, and reflects poorly on the lawyer that sanctions or employs such a tactic. Respondents' recusal request is without merit; it is also frivolous.

## CONCLUSION

IT IS HEREBY ORDERED that Gregory J. Rasczyk's and Gary L. Richardson's objections to the Independent Administrator's decision are DENIED; and

IT IS FURTHER ORDERED that Gregory J. Rasczyk's and Gary L. Richardson's recusal motion is DENIED; and

IT IS FURTHER ORDERED that the decision of the Independent Administrator is AFFIRMED in its entirety as to all respondents; and

IT IS FURTHER ORDERED that, effective immediately, the stay of penalties imposed by the Independent Administrator is dissolved.

SO ORDERED.